**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOSEPH GALLO, | : |
|     Plaintiff, | : CIVIL ACTION NO. 06-1549 (MLC) |
| v. | : **MEMORANDUM OPINION** |
| HAMILTON TOWNSHIP POLICE DEPARTMENT, et al., | : |
|     Defendants. | : |

**COOPER, District Judge**

    The defendant Hamilton Township Police Department ("HTPD") moves to dismiss the complaint — insofar as asserted against it — filed by the plaintiff, Joseph Gallo (the "plaintiff"), for failure to state a claim upon which relief may be granted, pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). (Dkt. entry no. 9.)  The Court, for the reasons stated herein, will deny the motion.

**BACKGROUND**

    The plaintiff is "profoundly deaf and communicates primarily through American Sign Language." (Compl., at 2.)  The plaintiff alleges that HTPD — pursuant to an arrest warrant — arrested the plaintiff on or about February 28, 2005, and brought him to the Hamilton Township Police Station. (Compl., at 3.)  The plaintiff showed HTPD (1) an emergency identification card for the deaf with the telephone number for it to arrange a sign language

interpreter; and (2) a card with (a) his attorney's name and telephone number, and (b) N.J.S.A. § 34:1-69.10 typed on the back of the card.  (Id.)[1]  HTPD "ignored" the plaintiff's requests for a sign language interpreter and did not provide him with an interpreter or his Miranda warnings before or after arresting and questioning him.  (Id.)

The plaintiff was then transferred to the defendant Mercer County Corrections Center ("MCCC") where — despite informing MCCC that he was deaf and requesting a sign language interpreter — he was classified and subjected to an initial medical intake without having a qualified sign language interpreter present.  (Id.) While at MCCC from February 28, 2005, through March 11, 2005, the plaintiff requested — on numerous occasions — a qualified sign language interpreter to assist him with communicating and a Telecommunications Device for the Deaf ("TTY").  (Id. at 4.) However, the defendants denied these requests and he was not provided with any interpreter or a TTY with appropriate light. (Id.)

The plaintiff appeared before a judge in "video court" on March 2, 2005, for a scheduled hearing, but the hearing was

---

[1] N.J.S.A. § 34:1-69.10c(1) provides that "[w]hen a hearing impaired person is arrested for an alleged violation of a criminal law, a qualified interpreter shall be appointed prior to reading of Miranda warnings, interrogating or taking a statement from the hearing impaired person."

rescheduled because the defendants failed to provide or attempt to obtain an interpreter. (Id.) Wanda G. Pace ("Pace"), a MCCC counselor, also ignored the plaintiff's request for an interpreter on March 3, 2005. (Id.) The plaintiff also requested a TTY so that he could telephone his attorney and parents, but the MCCC did not have an operable TTY with an outside line. (Id.) The plaintiff then requested that he be permitted to use his pager to e-mail his parents and attorney, but Pace informed him that (1) he was not allowed to use a pager, and (2) his attorney would have to contact his parents. (Id.) Because the plaintiff did not have a qualified sign language interpreter, all communications between the plaintiff and his attorney were facilitated through Pace. (Id.) The MCCC also did not allow the plaintiff to have visitors during his incarceration and he was not otherwise informed of the MCCC's rules and procedures. (Id.)

The plaintiff developed pink eye on March 8, 2005, and the MCCC did not provide him with an interpreter for his medical treatment. (Id. at 5.) The plaintiff appeared again before a judge in video court on March 9, 2005. (Id.) However, the plaintiff was remanded back to MCCC because no interpreter had been provided to him despite his request to the sheriff to have one provided for him. (Id.)

The plaintiff reported "suicidal ideation" to a nurse at MCCC on March 10, 2005, and requested that he be provided with an interpreter.  (Id.)  The plaintiff was not provided with an interpreter, but he was placed in a room in the medical department.  (Id.)  The plaintiff was also approached to take a blood test during his incarceration, but he refused and the "defendants got angry when he didn't understand the word 'protocol' as nothing was explained to him and no interpreter was provided by [the] defendants."  (Id.)  The plaintiff made another request for an interpreter from the MCCC psychologist on March 11, 2005, but he was again not provided with an interpreter.  (Id.)  The plaintiff was transferred from the MCCC to the Lehigh County Sheriff's Office on March 11, 2005.  (Id.)

The plaintiff brought this action on April 3, 2006, against the defendants, HTPD, Shirley Tyler — individually and as warden of MCCC, MCCC, Mercer County Court, and the State of New Jersey, for allegedly violating Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § ("Section") 1983, Section 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act"), and the New Jersey Law Against Discrimination ("NJLAD").  (Dkt. entry no. 1).  HTPD now moves to dismiss all of the claims asserted against it in the complaint.

4

**DISCUSSION**

I.   **Standard Of Review For A 12(b)(6) Motion**

A complaint may be dismissed for "failure to state a claim upon which relief can be granted."  Fed.R.Civ.P. 12(b)(6).  On a motion to dismiss, the Court must accept as true all of the factual allegations in the complaint, and draw all reasonable inferences in favor of the plaintiff.  Doe v. Delie, 257 F.3d 309, 313 (3d Cir. 2001).  But a court need not credit a complaint's "bald assertions" or "legal conclusions" when deciding a motion to dismiss.  In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1429-30 (3d Cir. 1997) (citation omitted).  "Dismissal of claims under Rule 12(b)(6) is appropriate only if it appears beyond doubt that the plaintiff can prove no set of facts in support of [the] claim upon which relief may be granted."  Jakomas v. McFalls, 229 F.Supp.2d 412, 419 (W.D. Pa. 2002).

The Court, when considering a motion to dismiss, may generally not "consider matters extraneous to the pleadings."  In re Burlington Coat Factory Sec. Litig., 114 F.3d at 1426.  However, if the Court exercises discretion and permits a party to present matters outside the pleadings, the Court must (1) convert the motion to dismiss into one for summary judgment, and (2) allow the parties a reasonable opportunity to present all material pertinent to such a motion under Rule 56.  Fed.R.Civ.P.

5

12(b). An exception to this general rule is that the Court may consider (1) exhibits attached to the complaint, (2) matters of public record, and (3) all documents that are integral to or explicitly relied upon in the complaint without converting the motion to dismiss into one for summary judgment. Angstadt v. Midd-West Sch. Dist., 377 F.3d 338, 342 (3d Cir. 2004) (citation omitted).[2]

## II. Analysis

### A. Claims Under the ADA, Rehabilitation Act, and NJLAD

The plaintiff contends that HTPD violated the ADA, Rehabilitation Act, and NJLAD, by (1) failing to provide reasonable accommodations for his disability, and (2) discriminating against him based on his disability. (Compl., at 2.) Specifically, the plaintiff claims that HTPD discriminated against him by failing to provide appropriate and reasonable auxiliary aids — such as a qualified sign language interpreter and TTY — to a person who is deaf to ensure effective communication. (Id. at 2-3.) HTPD argues that the plaintiff's

---

[2] "The rationale underlying this exception is that the primary problem raised by considering documents outside the complaint — lack of notice to the plaintiff — is dissipated where the plaintiff has actual notice and has relied upon the documents in framing the complaint." Jones v. Intelli-Check, Inc., 274 F.Supp.2d 615, 625-26 (D.N.J. 2003) (citations omitted).
    The plaintiff included his certification with his opposition papers. This certification constitutes evidence outside the complaint, and is neither relied upon, nor integral to the complaint. Therefore, the Court will not consider this certification in resolving this motion.

ADA and Rehabilitation Act claims should be dismissed because he has failed to establish that he was denied "participation in, or the benefit of, the services, programs or activities of" HTPD. (Def. Br., at 3-5.) HTPD also claims that "[i]n light of the admittedly limited contact between the [p]laintiff and the HTPD on February 28, 2005, as well as [the p]laintiff's lack of injury and failure to demonstrate discrimination, the claim for relief under the [NJ]LAD must . . . be dismissed." (Id. at 7.) The Court finds that the plaintiff has alleged a cognizable claim against HTPD under the ADA, Rehabilitation Act, and NJLAD.

### 1. The ADA & Rehabilitation Act Claims

Section 504 of the Rehabilitation Act provides in part that "No otherwise qualified individual with a disability . . ., shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794. Further,

> the broad reach of this statutory provision is evidenced by the definition of "program or activity" which includes "all of the operations of a department, agency, special purpose district, or other instrumentality of a State or of a local government [. . .] any part of which is extended Federal financial assistance." 29 U.S.C. § 794(b)(1)(A); see also Yeskey v. Commonwealth of Pennsylvania Dep't of Corrections, 118 F.3d 168, 170 (3d Cir.), aff'd, 524 U.S. 206, 118 S.Ct. 1952, 141 L.Ed.2d 215 (1998); Gorman v. Bartch, 152 F.3d 907, 911 (8th Cir. 1998). To state a claim under § 504, a plaintiff must demonstrate that: (1) she is a qualified individual with

a disability; (2) she was denied the benefits of a program or activity of a public entity which receives federal funds; and (3) she was discriminated against based on her disability. See 29 U.S.C. § 794(a).

Title II of the [ADA] prohibits discrimination in the services of public entities and provides:

> [N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132. Like section 504 of the Rehabilitation Act, the [ADA]'s coverage extends to "all services, programs, and activities provided or made available by public entities," and is intended to "appl[y] to anything a public entity does." Yeskey, 118 F.3d at 171 (quoting 28 C.F.R. § 35.102(a) and pt. 35, app. A, subpt. A at 456 (1996 version)). Also congruous to section 504, to state a claim under the [ADA], a plaintiff must demonstrate that: (1) she is a qualified individual with a disability; (2) she was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of her disability. See 42 U.S.C. § 12132. Importantly, the law developed under section 504 of the Rehabilitation Act is applicable to Title II of the [ADA]. See Yeskey, 118 F.3d at 170. . . .

Calloway v. Boro of Glassboro Dep't of Pol., 89 F.Supp.2d 543, 551 (D.N.J. 2000).

The regulations promulgated to implement the ADA and Rehabilitation Act provide the underlying basis of the complaint. The regulations of the Rehabilitation Act provide that

> "[r]ecipients [of federal financial assistance] shall insure that communications with their applicants, employees and beneficiaries are effectively conveyed to those having impaired vision and hearing." 28 C.F.R. §

>    42.503(e) (1999).  More specifically, the regulations
>    implementing Title II of the Disability Act require
>    "public entit[ies to] take appropriate steps to ensure
>    that communications with applicants, participants, and
>    members of the public with disabilities are as effective
>    as communications with others."  <u>Id.</u> at § 35.160.
>    Accordingly, public entities must furnish "appropriate
>    auxiliary aids and services" which include qualified
>    interpreters, telecommunications devices for deaf persons
>    [(TTY's)] or "other effective methods of making aurally
>    delivered materials available to individuals with hearing
>    impairments." <u>Id.</u> at §§ 35.160(b), 35.104; <u>see also</u> 42
>    U.S.C. § 12102(1).  [A] "qualified interpreter" [is] "an
>    interpreter who is able to interpret effectively,
>    accurately, and impartially both receptively and
>    expressively, using any necessary specialized
>    vocabulary."  28 C.F.R. § 35.104.

<u>Calloway</u>, 89 F.Supp.2d at 552.

HTPD is a public entity covered under the ADA.  <u>See</u> 42 U.S.C. § 12131(1) (defining "public entity" to include, <u>inter alia</u>, any (1) "State or local government," and (2) "department, agency, special purpose district, or other instrumentality of a State or States or local government"); 28 C.F.R. § 35.104 (same). HTPD has not argued that it is not a public entity that receives federal financial assistance for purposes of the Rehabilitation Act.  Also, Gallo has supplied sufficient allegations that he is a "qualified individual with a disability" under the ADA and Rehabilitation Act.  <u>See</u> 29 U.S.C. § 705(20) (defining "individual with disability"); 42 U.S.C. § 12131(1) (defining "qualified individual with a disability").

The Court finds that the plaintiff has sufficiently alleged that he was potentially denied a service by HTPD.  The ADA

9

requires public entities such as the HTPD to ensure effective communication by providing auxiliary aids including qualified interpreters.  Moreover, N.J.S.A. § 34:1-69.10 requires that, "when a hearing impaired person is arrested for an alleged violation of a criminal law, a qualified interpreter shall be appointed prior to reading of Miranda warnings, interrogating or taking a statement from the hearing impaired person." Id.  Here, the plaintiff alleges that he was arrested and questioned, without receiving Miranda warnings or a qualified sign language interpreter to assist with communication with the HTPD.  HTPD's argument that "a fair reading of the [c]omplaint reveals that [the p]laintiff was aware of the reason for the arrest warrant being issued, understood the processing, was not questioned about any criminal action (thereby rendering moot any alleged failure to provide Miranda warnings), and was transported without incident, or injury to the MCCC" raises issues of fact that are improper for the Court to consider on a motion to dismiss.

    **2.   NJLAD Claim**

The NJLAD provides that "[a]ll persons shall have the opportunity . . . to obtain all the accommodations, advantages, facilities, and privileges of any place of public accommodation" without discrimination on the basis of handicap.  N.J.S.A. § 10:5-4.  Also, "all of the provisions of the act . . . shall be construed to prohibit any unlawful discrimination against any

10

person [who] is disabled." N.J.S.A. § 10:5-4.1. The plaintiff alleges that HTPD discriminated against him by failing to provide him with an interpreter, thus denying him the right and ability to effectively communicate with the police as provided to non-disabled individuals. All of HTPD's arguments, such as the plaintiff's "limited interaction" with the HTPD or his ability to demonstrate discrimination, are factual issues inappropriate for resolution on a motion to dismiss.

**B. Claim Under Section 1983**

The plaintiff asserts that HTPD violated Section 1983 because HTPD "failed to maintain policies and procedures to ensure compliance with Title II of the ADA, specifically policies that provide equal access and effective communication to individuals with disabilities." (Id. at 6.) HTPD argues that the plaintiff is unable to (1) "affirmatively demonstrate that . . . a policy, custom or practice of the Township or HTPD exists," and (2) establish an affirmative link between the policy asserted and any deprivation of the plaintiff's constitutional rights. (Def. Br., at 6.) HTPD also claims that the plaintiff has not alleged any deliberate or reckless indifference by policymakers. (Id.) The Court finds that HTPD has not shown that the plaintiff has failed to set forth sufficient allegations to support a Section 1983 claim.

A plaintiff asserting a claim under Section 1983 must allege the violation of a right secured by the Constitution or Federal law and show that the alleged deprivation was committed by a person "acting under color of State law." West v. Atkins, 487 U.S. 42, 48 (1988).  There is no general municipal respondeat superior liability under Section 1983.  Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978).  Rather, a municipality may be liable for damages, declaratory and injunctive relief under Section 1983, if the plaintiff "demonstrates that municipal policymakers, acting with deliberate indifference or reckless indifference, established or maintained a policy or well-settled custom which caused a municipal employee to violate [the plaintiff's] constitutional rights and that such policy or custom was the 'moving force' behind the constitutional tort."  Hansell v. City of A. City, 152 F.Supp.2d 589, 609 (D.N.J. 2001) (citing Bd. of the County Comm'rs v. Brown, 520 U.S. 397, 404 (1997)). Governmental liability thus "attaches when the constitutional injury results from the implementation or execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy."  Deptford Twp. Sch. Dist. v. H.B., No. 01-784, 2005 WL 1400752, at *8 (D.N.J. June 15, 2005) (internal quotations and citation omitted).  Further,

> a single decision by an official with policy-making authority in a given area could constitute official policy and thus be attributed to the government itself

> under certain circumstances.  Moreover, where a government's authorized decision maker adopts a particular course of action, the government may be responsible for that policy whether that action is to be taken only once or to be taken repeatedly.
> Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict.  A course of conduct is considered to be custom when, though not authorized by law, such practices of state officials [are] so permanent and well settled as to virtually constitute law.

Id. at *8-*9 (internal quotations and citations omitted).

The plaintiff alleges that HTPD questioned him without providing him with a qualified sign language interpreter or Miranda warnings.  The plaintiff also alleges that he was discriminated against based on his disability in violation of the ADA and Rehabilitation Act.  Therefore, the plaintiff appears to assert a Section 1983 claim for HTPD's alleged violation of his rights under the ADA and Rehabilitation Act.  Also, HTPD's other contentions about the insufficiency of this claim raise factual issues that the Court will not address at this stage of the proceedings.  The plaintiff has included sufficient allegations in the complaint to satisfy the requirements of a Section 1983 action claim HTPD.[3]

---

[3] The plaintiff has not specifically identified any constitutional violation.  Although the parties have not raised this issue, the Court notes that Section 1983 may not be used to enforce a right secured by a particular federal act if the remedial devices provided in that act are sufficiently comprehensive to demonstrate that Congress intended to preclude the remedy of suits under Section 1983.  Middlesex County Sewerage Auth. v. Nat'l Sea Clammers Ass'n, 453 U.S. 1, 19-20

**CONCLUSION**

The Court, for the reasons discussed herein, finds that the HTPD has failed to show that the plaintiff has not alleged cognizable claims against HTPD under the ADA, Rehabilitation Act, NJLAD, and Section 1983.  Accordingly, the Court will deny the motion seeking to dismiss the plaintiff's claims against HTPD. The Court will issue an appropriate order.

                                                  s/ Mary L. Cooper
                                                  **MARY L. COOPER**
                                                  United States District Judge

---

(1981).  At least one circuit court of appeals has held that the Rehabilitation Act and the ADA provide extensive, comprehensive remedial frameworks and that a plaintiff may not maintain a Section 1983 action if the only alleged deprivation is of rights created by those Acts.  Holbook v. City of Alpharetta, 112 F.3d 1522, 1531 (11th Cir. 1997).